USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    03/06/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL ANDREWS,

      Plaintiff,

-against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, et al.,

      Defendants.

23-CV-6968 (MMG) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. MARGARET M.
GARNETT**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Michael Andrews, proceeding pro se and *in forma pauperis*, brings this action against the New York City Health and Hospitals Corporation (HHC), sued as "New York City Health and Hospital Queens," Dr. Vincent Okabekwa, and nurse Kalon Francis, alleging that he was taken to the hospital against his will, administered medicine that made him sick, and held for a day even though he wanted to go home. Now before me for report and recommendation is defendant HHC's motion (Dkt. 62) to dismiss plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6). After careful review of the file, I recommend that the motion be granted.[1]

## I.    FACTUAL BACKGROUND

The facts summarized here are drawn from plaintiff's original Complaint (Compl.) (Dkt. 1); his Amended Complaint (FAC) (Dkt. 44); his Second Amended Complaint (SAC) (Dkt. 61); and his memorandum in opposition to HHC's motion to dismiss (Pl. Opp.) (Dkt. 65). On June 19, 2023,

---

[1] NYC Health + Hospitals Queens, also known as Queens Hospital Center, is a municipal hospital in Queens County, but is not a suable entity. The municipal hospitals in New York City are operated by HHC, which is "a public benefit corporation created by New York State law," *Toussaint v. Metro. Hosp.*, 2022 WL 1227740, at *1 (S.D.N.Y. Apr. 26, 2022), and has "the capacity to sue and be sued." *Id*. (citing N.Y. Unconsol. Laws §§ 7382, 7385(a)); *see also Syed v. NYCHHC Kings Cnty. Hosp.*, 2025 WL 895384, at *3 (E.D.N.Y. Mar. 24, 2025) (dismissing claims against a municipal hospital in Kings County and substituting HHC as the proper defendant). Consequently, "New York City Health and Hospital Queens" should be dismissed as a defendant; HHC should be substituted in its place, and the case should be recaptioned accordingly.

plaintiff called 911 to make a report about his neighbors (in Jamaica, Queens, *see* Compl. at 3) who were harassing him, not letting him sleep, and "putting chemicals in or near" his apartment. Id.. at 6; FAC at 9.[2] Emergency Medical Services (EMS) personnel arrived before the police, but plaintiff "declined their service because [he] just wanted a police report." Compl. at 6. When the police arrived, plaintiff was "illegally detain[ed], handcuffed and kidnapped" for 24 hours, even though he "did nothing wrong." *Id.*; *see also* FAC at 5 (the police came and "violate[d] [plaintiff's] rights by letting [EMS] take [him] to the hospital"); SAC at 8 (plaintiff was "escorted to the hospital against [his] will").

In the psychiatric unit at Queens Hospital Center, plaintiff was approached by a nurse and offered drugs that he "did not need." FAC at 5; *see also* SAC at 8 (they were "psychedelic drugs"). Plaintiff explained that he had an autoimmune disease and that his blood pressure was "just weird," but the nurse "still made [him] take" the medicine. SAC at 8. Plaintiff took the medicine, but "ran to the bathroom and threw it up," which caused him to experience stomach pain. *Id.* Plaintiff was then evaluated by defendant Okabekwa, who asked him "questions like any other doctor." SAC at 9. Plaintiff explained that he "ha[d] a certain kind of food diet," needed to take his medicine, and wanted to go home. SAC at 4. Although plaintiff was "saying this cool and collect[ed]," Dr. Okabekwa "started to say stuff like you look agitated." SAC at 4. Plaintiff then walked "out of the room," got "in front of the camera" with his hands folded, to show that he was "cool and waiting to go home," and "put [his] hand on [his] lip[s] like they were zip[p]ed." *Id*. Dr. Okabekwa "just walk[ed] away." *Id.* The next day plaintiff waited to be examined by a new doctor, but "he told me no because there is nothing wrong with me." *Id*.

---

[2] All citations to plaintiff's filings are to the page numbers assigned by the Court's Electronic Case Filing (ECF) system.

Ultimately, plaintiff was held "for a day in a place [he] was not supposed [to] be." FAC at 5. The experience triggered plaintiff's autoimmune disease and made him sick "for more than 6 months." FAC at 6; SAC at 9; *see also* Pl. Opp. at 2-3 (alleging that his involuntary hospitalization kept him "in the bed for months in pain and suffering").

## II.   PROCEDURAL HISTORY

Plaintiff Andrews, who is an experienced litigant in this Court,[3] filed his original Complaint on August 7, 2023, against the City of New York; Kevin "Rico," later identified as Fire Department of New York (FDNY) Emergency Medical Technician (EMT) Kevin Pico; "Officer Evans," later identified as New York Police Department (NYPD) Sgt. Matthew Evans (collectively, the City Defendants); "NY Health Hospitals Queens"; and Bellevue Hospital (Bellevue). Compl. at 1.[4] On the pro se complaint form, he invoked this Court's federal question jurisdiction. *Id*. at 2. When asked which of his federal constitutional or statutory rights were violated, plaintiff wrote that the NYPD illegally detained him, the FDNY illegally looked at his medical records, and the hospital illegally held him for 24 hours. *Id*. at 2.

On August 21, 2023, the Hon. Lewis J. Liman, United States District Judge, dismissed plaintiff's claims against Bellevue, authorized service on the City and HHC, and directed the New

---

[3] *See, e.g.*, *Andrews v. City of New York*, 2019 WL 5864993, at *1 n.1 (S.D.N.Y. Nov. 4, 2019) (dismissing plaintiff's claims against the City and various housing officials arising out of problems with his apartment, and noting that plaintiff previously brought "several other actions"); *Andrews v. City of New York*, 2023 WL 3724978, at *2-3, 7 (S.D.N.Y. May 30, 2023) (dismissing plaintiff's claims against the City, the District Attorney's Office, and various individuals for failing to preserve video evidence for use in a prior lawsuit, since settled, in which plaintiff alleged that an employee of the Department of Homeless Services assaulted him and then lied about it to get him arrested).

[4] Plaintiff's allegations against Bellevue – another municipal hospital – arose from an earlier incident in which Bellevue personnel "overlook[ed] the fact that [plaintiff] had all four of [his] wisdom teeth impacted," and told him that he was "hallucinating about the pain." Compl. at 5.

York City Law Department to provide service addresses for "Rico" and Evans (Dkt. 6), which it did. (*See* Dkt. 20.)

On December 6, 2023, HHC moved to dismiss the original Complaint pursuant to Rule 12(b)(6) (Dkt. 21), and on February 16, 2024, plaintiff sought leave to amend his pleading. (Dkt. 28.) On August 28, 2024, the Hon. Margaret M. Garnett, United States District Judge, to whom the case had been reassigned, granted plaintiff's motion to amend (in accordance with her Individual Rules and Practices, which "allow for a Plaintiff to amend a complaint in response to a motion to dismiss without prior permission of the Court") and denied HHC's initial motion to dismiss without prejudice to renewal. (Dkt. 43.)

Plaintiff filed his amended complaint on September 27, 2024, naming the City, HHC, "Rico," Evans, and "All Jon Doe's, to be later named." FAC at 1. This time, when prompted to identify which of his federal rights were violated, plaintiff wrote, "Why I was kidnapped, I did not hurt myself or anyone else. [F]or trying to force[] me drugs with no medical diagnosis. [T]hey had no right or legal basi[s] to detain me." *Id.* at 2. On October 16, 2024, HHC renewed its previously filed motion to dismiss (Dkt. 47 at 1), and on October 24, 2024, Judge Garnett referred the case to me for general pretrial management and report and recommendation on that motion. (Dkt. 48.)

On January 21, 2025, I conducted an initial case management conference, at which plaintiff provided physical descriptions for the "Doe" defendants, including various members of the Queens Hospital Center medical staff. After the conference, I referred the case to mediation (Dkt. 53), and directed HHC to make efforts to identify those staff members by name. (Dkt. 54.) In a status update letter dated February 27, 2025, HHC reported that it had identified two of the Queens Hospital Center staff who had interacted with defendants as Vincent Okabekwa, M.D., and Kalon Francis, R.N., 2/2725 Status Ltr. (Dkt. 58) at 2, and the City Defendants reported that they had reached a

4

settlement with the plaintiff. *Id*. at 1-2.[5] On March 6, 2025, I authorized plaintiff to file a second amended complaint, adding the two newly-identified Queens Hospital Center staff members and dropping the City Defendants. (Dkt. 60.)

On March 18, 2025, plaintiff filed his SAC, thereby mooting HHC's motion to dismiss the FAC. The SAC names "New York City Health and Hospital Queens," Okabekwa, and Francis as defendants and focuses on the events of June 19, 2023. SAC at 1, 8-9. This time, when asked which of his federal rights were violated, plaintiff wrote nothing at all. *Id*. at 2. Under "Injuries," however, he wrote that he suffered "[e]motional damages due to the Hospital's involvement and having me kidnapped, making me take medicine that I didn't agree with body, and triggering my Autoimmune disease." *Id*. at 9. Plaintiff seeks $75,000 in damages. *Id*.

On April 11, 2025, HHC filed the motion to dismiss now before the Court. In its supporting memorandum (Def. Mem.) (Dkt. 64), HHC construes the SAC as asserting a claim pursuant to 42 U.S.C. § 1983 for unlawful seizure in violation of the Fourth Amendment. *See* Def. Mem. at 7. HHC argues that plaintiff has failed to state such a claim because he has not set forth facts sufficient to demonstrate (i) that the hospital staff violated the "probable cause" standard applicable to involuntary psychiatric hospitalizations, or (ii) that he was held pursuant to any "official policy or custom," as required to state a claim of municipal liability against HHC. *Id*. at 7-10. In his opposition memorandum, plaintiff asserts that he does not have any mental illness and argues, erroneously, that "you have to be commit[ed] to the hospital[] [b]y a spouse or [a] relative." Pl. Opp. at 1.[6] On May 9, 2025, Judge Garnett amended my reference to include report and

---

[5] A stipulation formally dismissing plaintiff's claims against the City Defendants was filed on May 9, 2025. (Dkt. 68.)

[6] In addition, plaintiff uses his opposition memorandum to complain about his "misdiagnosis" at Bellevue Hospital, which took place in 2009, and "the cops[']" failure to "look into" his neighbors, who were harassing people "because of their race." Pl. Opp. at 2. Although I am treating these

recommendation on the pending motion (Dkt. 67), and HHC filed its reply letter-brief (Def. Reply) (Dkt. 69).

To date, neither Dr. Okabekwa and nor nurse Francis has appeared.

## III.    DISCUSSION

### A.    Legal Standards

#### 1.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the factual content pleaded enables a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When evaluating a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,191 (2d Cir. 2007). I have done so here. I have also accepted – under the same standard – the factual allegations made in his opposition memorandum, to the extent not inconsistent with his pleading. *See Ford v. Miller*, 2019 WL

---

allegations as part of plaintiff's pleading, *see infra* Part II(A)(1), they are of no legal effect. In New York, § 1983 claims are subject to a three-year statute of limitations. *Duplan v. City of New* York, 888 F.3d 612, 619 (2d Cir. 2018). Consequently, plaintiff cannot sue HHC under § 1983 for his alleged mistreatment in at Bellevue in 2009. Nor can he sue HHC for the NYPD's alleged failure to "look into" his neighbors.

6831640, at *6 (S.D.N.Y. Aug. 23, 2019) ("[F]actual allegations made in a *pro se* plaintiff's opposition papers, or the attachments thereto, may be considered 'as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint.'") (quoting *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012)), *adopted*, 2019 WL 4673445 (S.D.N.Y. Sept. 25, 2019); *see also Washington v. Balletto*, 2021 WL 2741742, at *1 (S.D.N.Y. July 1, 2021) (accepting as true "the facts, but not the conclusions," set forth in plaintiff's initial complaint, amended complaint, and opposition memorandum); *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 521 n.1 (S.D.N.Y. 2016) (collecting cases).

However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that includes only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief." *Ballentine v. Bronx Care Med. Ctr.*, 2024 WL 4635253, at *1 (S.D.N.Y. Oct. 28, 2024).

### 2. Pro Se Pleadings

Because plaintiff is proceeding pro se, the Court must liberally construe his submissions "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999)). The rationale for a liberal construction of a pro se plaintiffs' pleading is to "protect [them] from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95(2d Cir.1983)). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (quoting *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426

7

(S.D.N.Y. 2003)). Thus, a pro se plaintiff, like other plaintiffs, "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

### 3.  Section 1983

42 U.S.C. § 1983 permits civil suits against those who, acting "under color" of state law, have deprived a plaintiff of "any rights, privileges, or immunities secured by the Constitution" or laws of the United States. 42 U.S.C. § 1983. "Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere." *Soberanis v. City of New York*, 244 F. Supp. 3d 395, 400 (S.D.N.Y. 2017) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). To state a claim under § 1983, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of 'rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citation omitted).

### B.    Analysis

### 1.      Applicable Law

As noted above, HCC construes the SAC as seeking redress under § 1983 for defendants' alleged violation of plaintiff's Fourth Amendment right to be free from unreasonable seizures. *See* Def. Mem. at 7. HCC is correct that "the Fourth Amendment's protections [] apply to involuntary hospitalizations." *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993); *see also Kraft v. City of New York*, 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010) (Chin, J.) ("An involuntary confinement to a hospital constitutes a seizure within the meaning of the Fourth Amendment.") *aff'd,* 441 F. App'x 24 (2d Cir. 2011). In addition, an involuntary hospitalization – even for a short period of time, for purposes of evaluation – "is a 'massive curtailment of liberty,' *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (internal quotation marks omitted), and it therefore cannot permissibly be accomplished without due process of law[.]" *Rodriguez v. City of New York*,

8

72 F.3d 1051, 1061 (2d Cir. 1995); *accord Cortlandt v. Westchester Cnty.*, 2007 WL 3238674, at *6 (S.D.N.Y. Oct. 31, 2007). "[F]orced medication" likewise "require[es] due process protection." *Antwi v. Montefiore Med. Ctr.*, 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014).

Consequently, "[i]nvoluntary hospitalization by state actors implicates Fourteenth Amendment rights to substantive and procedural due process" as well as "Fourth Amendment rights against unreasonable seizure." *Lurch v. Chaput*, 2023 WL 2469943, at *1 (2d Cir. Mar. 13, 2023) (summary order); *see also Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (analyzing plaintiff's claims arising out of her overnight involuntary hospitalization at Kings County Hospital under both the Fourth and the Fourteenth Amendments); *Matthews v. City of New York*, 2016 WL 5793414, at *3-7 (S.D.N.Y. Sept. 30, 2016) (same); *Cortlandt*, 2007 WL 3238674, at *5 ("Involuntary civil commitment raises two potential constitutional issues – the Fourth Amendment prohibition against unreasonable search and seizure and the right to due process under the Fourteenth Amendment."). In accordance with these well-settled principles, I construe plaintiff's federal claims as arising under both the Fourth and the Fourteenth Amendments.

### 2. Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons" against "unreasonable searches and seizures." U.S. Const. amend. IV. "A person is seized for Fourth Amendment purposes when in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Drozdik v. City of New York*, 2003 WL 366639, at *5 (S.D.N.Y. Feb. 20, 2003) (internal quotations and citation omitted). Although plaintiff does not expressly allege that he was not free to leave Queens Hospital Center (much less identify the person or persons who made that decision), he asserts that he was held for 24 hours, Compl. ¶ 2, "against [his] will." FAC at 6. I therefore accept, for purposes of the pending motion, that plaintiff has adequately alleged that he was "seized" while at the hospital.

9

However, such a seizure is not unreasonable, and hence "does not violate the Fourth Amendment," if it is "based upon probable cause, meaning that '"there are reasonable grounds for believing that the person seized" is dangerous to herself or to others.'" *Fisk v. Letterman*, 501 F. Supp. 2d 505, 526 (S.D.N.Y. 2007) (quoting *Anthony*, 339 F.3d at 137); *accord Matthews*, 2016 WL 5793414, at \*3; *Kraft*, 696 F. Supp. 2d at 415; *Cortlandt*, 2007 WL 3238674, at \*5.[7] Importantly, "a showing of probable cause in the mental health seizure context requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." *Vallen v. Connelly*, 2004 WL 555698, at \*8 (S.D.N.Y. Mar. 19, 2004) (quoting *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir.1997)), *aff'd,* 185 F. App'x 22 (2d Cir. 2006); *see also Kraft*, 696 F. Supp. 2d at 415-16 (dismissing plaintiff's unlawful seizure claim where it was undisputed that "the doctor defendants determined that plaintiff might have a mental illness that would likely result in serious harm to himself or others if left untreated"). Moreover, "a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition." *Vallen*, 2004 WL 555698, at \*8 (quoting *Monday*, 118 F.2d at 1102).

Here, the face of plaintiff's various pleadings reveals that the staff of Queens Hospital Center had probable cause to hold plaintiff for evaluation. He was taken to the hospital after EMS and NYPD personnel responded to a 911 call that he made because he believed his neighbors were "putting stuff by [his] do[or] for like the 10[th] time." Compl. at 6; *see also* FAC at 9 (alleging that his neighbors were "harassing [him], not letting [him] sleep and putting chemicals in or near [his]

---

[7] State law is in accord. Under the New York Mental Hygiene Law (MHL), which has withstood constitutional challenge, *see Rodriguez*, 72 F.3d at 1062, a comprehensive psychiatric emergency program can retain a person for a period of up to seventy-two hours, without a court order, when the individual is "alleged to have a mental illness for which immediate observation, care and treatment in such program is appropriate and which is likely to result in serious harm to the person or others." MHL § 9.40(a).

a[partment]"). Both EMT Pico and NYPD Sgt. Evans concluded that he needed medical evaluation. Compl. at 6; FAC at 5. Hospital staff then "listened" to what the first responders reported, *see* Pl. Opp. at 1, and Dr. Okabekwa examined plaintiff and found him to be "agitated." SAC at 4. When Dr. Okabekwa shared his observation with plaintiff, plaintiff walked out of the room, got "in front of the camera," and performed for it, first folding his hands to show he was "cool" and then putting his hand on his lips "like they were zip[p]ed." SAC at 4.

Given these admissions – particularly the "direct observations" of Dr. Okabekwa, *see Lurch*, 2022 WL 889259, at *7, and plaintiff's erratic response – his conclusory allegations that he "did nothing wrong," Compl. at 6, and "do[es] not have a mental illness," Pl. Opp. at 1, are insufficient to demonstrate that the HHC personnel who saw him at Queens Hospital Center lacked probable cause to hold him (for far less than the 72 hours allowed by statute) for evaluation. *See Drozdik*, 2003 WL 366639, at *5 ("Drs. Saas and Dakis made medical judgments that Drozdik posed . . . a danger. Accordingly, probable cause existed for the involuntary commitment of Drozdik and his seizure did not violate the Fourth Amendment."). Likewise, plaintiff's contention that HHC staff "should not have listened" to the first responders who brought him to the hospital, Pl. Opp. at 1, because they were "being spiteful," Compl. at 6; FAC at 5; Pl. Opp. at 1, is unavailing. *See*, *e.g.*, *Fisk*, 501 F. Supp. 2d at 527 (Dr. Roman, who determined to keep plaintiff hospitalized, properly relied on her "statements and behavior, as described by CBS security staff and the Project Help team," as well as observations "by medical staff at the hospital"); *Katzman v. Khan*, 67 F. Supp. 2d 103, 110 (E.D.N.Y. 1999) ("The doctors at the QHC rightly considered both the EMS report and [a witness's] statements before also making their own findings and determinations."), *aff'd*, 242 F.3d 365 (2d Cir. 2000).

### 3.    Fourteenth Amendment

"Substantive due process prohibits states from involuntarily committing nondangerous mentally ill individuals." *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010); *see also Rodriguez*, 72 F.3d at 1061 ("As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others[.]"). However, the Due Process Clause does not "require a guarantee that a physician's assessment of [dangerousness] be correct." *Bolmer*, 594 F.3d at 142 (quoting *Rodriguez,* 72 F.3d at 1062) (alteration in original). Rather, "an involuntary commitment violates substantive due process if the decision is made 'on the basis of substantive and procedural criteria that are . . . substantially below the standards generally accepted in the medical community.'" *Id.* (quoting *Rodriguez*, 72 F.3d at 1063) (alteration in original). Thus, "[w]here a plaintiff brings a substantive due process claim, he must allege facts suggesting that the named defendants' 'medical decisions represent such a substantial departure from accepted professional judgment, practice, or standards that it demonstrates that they did not base their decision on such a judgment.'" *Smalls v. Kirby Psychiatric Ctr.*, 2025 WL 2410610, at *4 (S.D.N.Y. Aug. 19, 2025) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

Plaintiff alleges no facts that would suggest that the medical decisions made by Dr. Okabekwa (or anyone else at Queens Hospital Center) were based on "criteria that [were] substantially below the standards generally accepted in the medical community," *Bolmer*, 594 F.3d at 142, much less that those decisions "represent[ed] such a substantial departure from accepted professional judgment, practice, or standards" as to show that they were not based on medical judgments at all. *Smalls*, 2025 WL 2410610, at *4. At best, plaintiff alleges only that he disagreed with Dr. Okabekwa's assessment of his mental state, *see* SAC at 4, and with an unidentified nurse's

12

view that he needed medication. FAC at 5.[8] Plaintiff has therefore failed to state a substantive due process claim.[9]

His procedural due process claim fails as well. As noted above, "the Second Circuit has upheld the constitutionality of the procedures for the involuntary commitment of mentally ill patients under New York Mental Hygiene Law." *Cortlandt*, 2007 WL 3238674, at *6 (citing *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983)). "Thus, where a physician's decision to confine a patient comports with the MHL's provisions, the patient cannot prevail on a claim that the hospitalization violated either their substantive or procedural due process rights." *Lurch v. Chaput*, 2022 WL 889259, at *5 (S.D.N.Y. Mar. 25, 2022), *aff'd*, 2023 WL 2469943 (2d Cir. Mar. 13, 2023). "Plaintiff does not plead facts suggesting that any individual failed to follow the procedures set forth in New York's Mental Hygiene Law" when evaluating or medicating him at Queens Hospital Center. *Smalls*, 2025 WL 2410610, at *5.[10] Consequently, both branches of his due process claim should be dismissed.

---

[8] Plaintiff alleges that a "black lady nurse" gave him the medication. FAC at 5; *see also* SAC at 8 (referring to the nameless nurse who made him take medication as "she"). According to HHC, nurse Francis – who triaged plaintiff upon his arrival at the hospital – is male. *See* 2/27/25 Status Ltr. at 2. Plaintiff has therefore failed to allege any potentially actionable conduct on the part of nurse Francis.

[9] *Cf. Matthews*, 2016 WL 5793414, at *6 (denying Rule 12(b)(6) motion as to substantive due process claim where plaintiff alleged, in detail, that Bellevue staff members "mischaracterized facts," "deliberately falsified documents and gave false testimony," "reached medical conclusions without seeing, meeting, or speaking with Plaintiff," "and sought to commit Plaintiff for financial reasons that have no relation to Plaintiff's medical condition").

[10] *Cf. Cortlandt*, 2007 WL 3238674, at *5 (denying Rule 12(b)(6) motion as to procedural due process claim where plaintiff, who was held in a psychiatric facility well beyond the 72 hours permitted by MHL § 9.40, alleged that no psychiatrist or medical doctor met with her before she was committed, that her attorney was barred from a meeting at which she was entitled to have counsel present, and that defendants otherwise failed to comply with the procedures set forth in MHL § 9.39).

### 4.    Municipal Liability

When a plaintiff sues a municipal corporation such as HHC under § 1983, "it is not enough for the plaintiff to allege that [HHC's] employees or agents engaged in some wrongdoing." *Smalls*, 2025 WL 2410610, at *3. Under *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978), the plaintiff must show "that the constitutional wrong complained of resulted from the corporation's official policy, custom, ordinance, regulation, or decision." *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); *accord Smalls*, 2025 WL 2410610, at *3; *Torres v. Bellevue S. Assocs. L.P.*, 2020 WL 3377797, at *8 (S.D.N.Y. June 18, 2020); *McTerrell v. New York City Health & Hosps. Corp.*, 2020 WL 1503194, at *3 (S.D.N.Y. Mar. 30, 2020). Thus, in order to state a claim against the municipal entity, the plaintiff must "allege facts showing (1) the existence of an [HHC] policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." *Smalls*, 2025 WL 2410610, at *3; *accord McTerrell*, 2020 WL 1503194, at *3.

A "policy, custom or practice" can be demonstrated by "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations and quotation marks omitted); *accord Matthews*, 2016 WL 5793414, at *9. To prevail on a *Monell* claim, a plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" he suffered. *City of Canton v. Harris*, 489

14

U.S. 378, 385 (1989). "At the pleading stage, plaintiff need not prove these elements, but must plead them sufficiently to make out a plausible claim for relief." *Matthews*, 2016 WL 5793414, at *9. "Boilerplate statements will not suffice." *Id.*

Plaintiff fails to plead the existence of any relevant HHC "policy, custom, or practice" under any of the four possible options sketched above. He does not describe any HHC policy that caused him to be held overnight for evaluation; does not claim that was detained as a result of any action taken by senior HHC officials; and makes no effort to show that his treatment was influenced by a widespread "custom or usage" at HHC generally or at Queens Hospital Center. Moreover, although his original Complaint requested that "all individuals involved . . . be retrained," Compl. at 7, he does not set forth any facts suggesting that HHC's employees were untrained or improperly trained, much less that he was unlawfully held as a result of any training deficits. Rather, he alleges only that he was held "for a day in a place [he] was not supposed [to] be," FAC at 5, and recounts his interactions with one nurse and two doctors. *See* SAC at 4, 8.

"It is well established that where, as here, the only alleged facts pertain to a single incident . . . such allegations are insufficient to raise an inference of the existence of a municipal custom or policy" sufficient to survive a motion to dismiss. *Patterson v. Westchester Cnty.*, 2014 WL 1407709, at *11 (S.D.N.Y. Apr. 11, 2014) (collecting cases), *adopted*, 2014 WL 2759072 (S.D.N.Y. June 16, 2014); *see also Knowles, v. Saint Barnabas Hosp.,* 2021 WL 4868694, at *7 (S.D.N.Y. Sept. 30, 2021) (recommending dismissal of *Monell* claim where the complaint "concern[s] a specific one-time incident in which Knowles was hospitalized in October to November 2020" and "alleges none of the facts that would establish a policy or practice claim"), *adopted*, 2021 WL 4865182 (S.D.N.Y. Oct. 15, 2021). Thus, even if plaintiff's factual allegations, taken as true,

15

plausibly alleged a § 1983 claim against Dr. Okabekwa or nurse Francis, his claims against HHC would fail.

### 5.   Amendment

"Generally, leave to amend should be 'freely given,' Fed. R. Civ. P. 15(a), and a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir. 1984)). However, leave may "properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, plaintiff has already amended twice – in response to successive motions to dismiss by HCC – but has failed to plead any viable federal claim. In particular, he has made no effort to allege facts showing the existence of an HHC policy, custom, or practice that caused the alleged violation of his constitutional rights, as required to state a *Monell* claim against HHC. Nor has he asked for a further opportunity to amend."[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough." *State St. Global Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 443 (S.D.N.Y. 2020) (quoting *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003)). In this case, that point has been reached.

### 6.   State Law Claims

Read liberally, the SAC could be construed as asserting various state law claims, such as false imprisonment, battery, or – potentially – medical malpractice. Any such claims, however, are within this Court's supplemental jurisdiction only to the extent that they form "part of the same

case or controversy" as his § 1983 claims. 28 U.S.C. § 1367(a).[11] Supplemental jurisdiction may be declined where "the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). Although the statute is phrased in discretionary terms, and there is no "mandatory rule to be applied inflexibly in all cases," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*.; *see also Kolari v. N.Y.-Presbyterian Hosp*., 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (upholding a district court's jurisdictional determination after the district court dismissed all federal claims); *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) (noting that courts in this district routinely decline to exercise supplemental jurisdiction and collecting cases); *Marcus v. AT&T Corp*., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Here, there is no discernable federal interest embedded in plaintiff's inchoate state-law claims. Nor do any of the other *Cohill* factors militate in favor of this Court retaining jurisdiction over those claims. Consequently, the Court should decline to exercise supplemental jurisdiction over "any state law claims Plaintiff may be asserting." *Andrews*, 2023 WL 3724978, at *7.

---

[11] Because plaintiff resided in Queens when he filed this action, *see* Compl. at 3, the parties are not diverse.

## IV.    CONCLUSION

For the reasons set forth above, I recommend, respectfully, that HHC's motion to dismiss (Dkt. 64) be GRANTED; that plaintiff's federal claims against HHC be DISMISSED WITH PREJUDICE, pursuant to Rule 12(b)(6), and that any state-law claims plaintiff intended to assert be DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is respectfully directed to substitute New York City Health and Hospitals Corporation as the first-named defendant in this action, in place of "New York City Health and Hospitals Queens," and amend the caption accordingly.

Dated: New York, New York
        March 6, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**


## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed.  *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Margaret M. Garnett, and delivered to Judge Garnett in accordance with her individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Garnett. Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).